68 U.S. 326
 17 L.Ed. 597
 1 Wall. 326
 UNITED STATES
v.
JOHNSON.
 December Term, 1863
 
 APPEAL from the District Court of the United States for the Southern District of California, the case being thus:
 Johnson and others, the respondents, claimed title under the Mexican government, through one Chaves, to a tract of land called Pleyto, lying in the present county of Monterey, State of California, and containing about three leagues; which land he had petitioned for on the 2d of June, 1845. The deed to Chaves purported to be made on the 18th July, 1845, by Pio Pico, one of the Mexican governors of California; and it recited that 'the necessary steps and investigations were previously taken and made in conformity with the requirements of laws and regulations.' On the 8th May, 1846, the 'expediente'* was laid before the Departmental Assembly, and was ordered to be referred to the Committee on Vacant Lands. The land asked for by Chaves having been once occupied by a community of priests, of the mission of St. Antonio, and being said to have a house upon it which they had built, the committee recommended that 'the expediente be remitted to the authorities of that jurisdiction to be reported on, and to the person in charge of San Antonio, in order that he may say in what condition that house was at the time the grant was made, so that it might be valued, and that community be indemnified, to avoid questions relative to the expediente, to the end that, after these proceedings are concluded, the respective approval may be given.' The Departmental Assembly, thus referring it, was soon afterwards dissolved, and nothing further done. The original grant made it a condition that Chaves should occupy the land, which there was evidence, though not wholly uncontradicted, that he did.
 In some of the deeds through which the respondents claimed, the parties signing the deeds did not, apparently, sign them by the exact names with which, in the instruments, they were described. One deed, for example, purported to be made by Tomas Soberannes, and was signed Thomas G. Soberannes. Another purported, in the body of it, to be made by Tomas Guadaloup Soberannes; but said that the land was devised to the said Tomas Guadaloup Sanchez, under the name of Guadaloup Soberannes. It was signed T. Guadaloup Sanchez, and acknowledged T. Guadalupe Sobrannes; and so in other instances. Some of the witnesses to papers making part of the title were persons whose names had been before this court in former cases, and had been spoken of, in judicial opinions reported, as not worthy of confidence.
 With these documents and this evidence, Johnson and the other claimants having presented their petition to the Board of Commissioners established by the act of March 3d, 1851, 'to ascertain and settle private land claims in the State of California,' and that board having confirmed it, the United States took the case by appeal into the District Court, which court having also confirmed it, the case came here, as already mentioned; the question being whether the petition for confirmation of the claim was rightly granted and affirmed.
 The title of Chaves was found among the archives. The deed of Governor Pico was authenticated below by proof of his handwriting, and that of his secretary, who witnessed it.
 Mr. Wills, for the United States, contended that this deed was not properly proved by proof of the handwriting of the officers attesting it; that the signatures might be genuine, but the dates might be prior to the true ones; that the governor himself and his secretary should have been called; that the parties signing other deeds were not the parties described in them. He referred to decisions in this court and to local land history in Mexico, to show doubtful character in some of the witnesses in the case, and in a general way to infer fraud in some parts of the transaction; several of the objections made not having been taken in the court below, and being first made here.
 Mr. Justice GRIER delivered the opinion of the court:
 
 
 1
 The title of Chaves is found among the archives. Its authenticity was not disputed before the commissioners or the District Court; but in this court the objection is first made that the handwriting of the public officers was proved, whereas the governor and secretary should have been called as the proper witnesses to authenticate their own acts.
 
 
 2
 In taking objections to these Mexican grants, it ought to be remembered that the case is not brought here on a writ of error with a bill of exceptions to the admission of every item of testimony offered and received below. Nor is it a part of the duty of counsel representing the government to urge microscopic objections against an honest claimant, and urge the forfeiture of his property for some oversight of the commissioners, in not requiring proof according to the strict rules of common law. When there is any just suspicion of fraud or forgery the defence should be made below, and the evidence to support the charge should appear on the record. If testimony of witnesses is alleged to be unworthy of belief, the record should show some reason to justify the court in rejecting it. The former opinions of this court may be referred to in questions of law, but cannot be quoted as evidence of the character of living witnesses.
 
 
 3
 On the 2d of June, 1845, Antonio Chaves petitioned the governor for the grant of a place called Pleyto, containing three leagues, a little more or a little less. The record does not show the usual reference for information. But the grant by Pio Pico, dated 18th July, 1845, recites that 'the necessary steps and investigations were previouly taken and made in conformity with the requirements of laws and regulations.' On the 8th of May, 1846, 'this espediente was laid before the Departmental Assembly, and was ordered to be referred to the Committee on Vacant Lands.' The committee recommended 'that the present espediente be remitted to the authorities of that jurisdiction to be reported on, and to the person in charge of San Antonio, in order that he may say in what condition the town was at the time the grant was made, so that it may be valued, and that community be indemnified to avoid questions relative to the espediente, to the end that after these proceedings are concluded the respective approval may be given.' As this Assembly was soon after finally dissolved, nothing further appears to have been done. There is evidence that Chaves was in the occupancy of the land granted.
 
 
 4
 We have frequently decided that the want of approval by the Departmental Assembly will not affect the validity of the grant. In this case the approval is not denied, but the question suspended.
 
 
 5
 Although some of the grants purporting to be made by Pio Pico, in the spring of 1846, shortly before his expulsion, have been shown to have been executed after that time, there is no evidence in this case to justify the court in deciding that this grant is not authentic.
 
 
 6
 DECREE AFFIRMED.
 
 
 
 *
 This term expediente is a term of the Mexican land law, and of course not familiar to the reader of law reports in general, though it has now become so to those of the reports of this court.
 'When complete, an expediente usually consists of the petition, with the dise no annexed; a marginal decree approving the petition, the order of reference to the proper officer for information; the report of that officer in conformity to the order; the decree of concession, and the copy, or a duplicate of the grant. These several papers,—that is, the petition with the dise no annexed, the order of reference, the inform e, the decree of concession, and the copy of the grant, appended together, in the order mentioned,—constitute a complete expediente within the meaning of the Mexican law.'—United States v. Knight's Admr., 1 Black, 245.